SHAW, J.,
dissenting.
I would certify that under subchapter 1-3, Rules Regulating the Florida Bar, Lydia Boesch is in good standing to apply for readmission to The Florida Bar. She has an unblemished disciplinary record, owes no fees, and has no outstanding continuing legal education (CLE) or basic skills course requirements. Should she decide to apply to the Bar, she stands in exactly the same position as any other new applicant in this regard. The Florida Bar agrees with this analysis.
I. FACTS
The following facts are set forth in Lydia Boesch’s pending petition for extraordinary relief. Boesch graduated from Florida State University with a degree in business in 1975 and worked as a certified public accountant in Jacksonville and Orlando until 1983 when she enrolled in law school at American University in Washington, D.C. She graduated from law school in 1986, took and passed the Florida bar exam in 1986, and was admitted to The Florida Bar in 1986. Subsequently, she worked as a staff attorney for a judge on the United States Tax Court in Washington, D.C., until June 1988. She then moved to San Francisco in August 1989, took and passed the California bar exam in 1990, was admitted to the California Bar in October 1990, and worked for a law firm there.
Boesch continued to pay her Florida Bar membership fees until 1993, when she decided that she would not be returning to Florida. Her membership in The Florida Bar lapsed on October 12, 1998, for nonpayment of fees for five years. Boesch moved to North Carolina in June 2001 and in December of that year applied to take the North Carolina bar exam. Section .0501 of the Rules Governing Admission to the Practice of Law in the State of North Carolina provides as follows:
.0501 Requirements for General Applicants
As a prerequisite to being licensed by the Board to practice law in the State of North Carolina, a general applicant shall:
[[Image here]]
(7) If the applicant is or has been a licensed attorney then the applicant be in good professional standing and entitled to practice in every state or territory of the United States, or the District of Columbia, in which the applicant has been licensed to practice law and not under any pending charges of misconduct. An applicant may be inactive and in good standing in any state in which the applicant has been licensed.
(Emphasis added.) Pursuant to this rule, Boesch obtained a statement from the California Bar that was acceptable to the North Carolina bar examiners.
As for her standing in Florida, Boesch has had extensive correspondence with The Florida Bar and the Bar has written two letters on her behalf in an unsuccessful attempt to satisfy the Board of Law Examiners of the State of North Carolina (“North Carolina law examiners”). Accordingly, The Florida Bar and Boesch *768 have worked together and determined that her best course is to file a petition for extraordinary relief in this Court, which she has done. In her present petition, she requests that “some form of good standing [be] bestowed upon petitioner by this Court for the limited purposes of her pending application with NC Law Examiners.” The Florida Bar has written a letter to the Clerk of this Court stating that it does not oppose the petition and that the Bar in fact helped Boesch frame her petition.
II. THE CORRESPONDENCE
The relevant correspondence in this case consists of a series of letters from the North Carolina law examiners to Boesch, on the one hand, and then from The Florida Bar to the North Carolina law examiners, on the other hand. This correspondence began on March 5, 2002, with the following brief statement to Boesch from the North Carolina law examiners:
This is written in regard to your application to take the July 2002 North Carolina Bar Examination.
If you have been advised that you are not in good standing with the Florida Bar and cannot obtain a certificate of good standing, this affects your application to take the NC Bar Examination. Please note Rule .0501(7).
You are being advised of this so you can take whatever steps necessary to correct this matter.
The Florida Bar on April 1, 2002, responded to the North Carolina law examiners with a lengthy letter explaining that, due to an unintended “glitch” in subchap-ter 1-3 of the Rules Regulating the Florida Bar, the rules “work an undue hardship on certain individuals seeking admission to other state bars or selected employment that is dependent upon an unequivocal Florida Bar representation of their membership ‘in good standing.’ ” The letter concluded as follows:
A formal characterization of Ms. Boesch’s membership highlights the shortcomings in our rules and nomenclature. Rule 1-3.2 of the Rules Regulating The Florida Bar, “Membership Classifications,” specifies only three official member categories: members in good standing, conditionally admitted members, and inactive members....
Prior to Ms. Boesch being administratively dropped from our rolls after the five-year period in which she did not pay annual fees, she was indeed a “member” of The Florida Bar — she was clearly not inactive, nor conditionally admitted, but she did not otherwise meet the full requirements for “good standing” which include payment of current fees. Additionally important — during Ms. Boesch’s entire period of “membership,” she had no history of discipline for professional or other misconduct by The Florida Bar or the Supreme Court of Florida.
Therefore, for the purposes of your inquiry, we would characterize Ms. Boesch as a member in good standing but for unpaid fees at the time that she was dropped from the membership rolls of The Florida Bar. Any other categorization of her membership would be outside the three official membership classifications currently recognized by our governing rules, and may inappropriately affect her pending application for admission to the North Carolina Bar.
The North Carolina law examiners on April 16, 2002, wrote a brief but key dispatch to Boesch, articulating their primary concern:
We have discussed your situation and that you are not a member in good standing in the Florida Bar and I have received follow up materials from Paul *769 F. Hill, General Counsel of the Florida Bar.
Because you are not in good standing with the Florida Bar, this affects your eligibility to take the North Carolina Bar Examination. Rule .0501(7) has been interpreted by the Board to mean that an applicant must be in good standing with any bar in which the applicant has been admitted even if an applicant is not in good standing for nonpayment of dues or not being up to date on CLE.
(Emphasis added.) Apparently, it is the policy of the North Carolina law examiners to deny the application of anyone who is not in good standing because of fee arrear-ages or outstanding CLE requirements.
The Florida Bar on April 30, 2002, again wrote a lengthy letter explaining that due to the unintended “glitch” in subchapter 1-3 “our rules have led to questionable outcomes in certain instances involving other state bar admissions.” The letter explained further:
If Ms. Boesch were to seek admission to practice law in our state anew through the Florida Board of Bar Examiners — and if The Florida Bar were asked to speak officially regarding that issue — we would not offer any unfavorable commentary regarding Ms. Boesch’s character and fitness due to her circumstances while previously admitted to practice in our state. Her final status as a “lapsed” member, who departed The Florida Bar no longer in good standing solely by virtue of nonpayment of membership fees, is not viewed by this organization as an impediment to readmission. Indeed, I understand that individuals situated similarly to Ms. Boesch who have actually applied for readmission in Florida have not experienced any difficulties in this regard with our state’s bar examiners if their lapse in prior membership was not related to professional misconduct.
Having received no clear response to its inquiry as to whether Ms. Boesch still owed membership fees in Florida, the North Carolina law examiners sent Boesch two brief letters. The first, dated June 12, 2002, read as follows:
The Board has recently considered your situation that you are not in good standing in a jurisdiction in which you ■have been previously admitted. I have been requested to advise you that you are not in compliance with Rule .0501(7) of the Board’s Rules. You will be given six months from the date of this letter to get in good standing with that Bar and have the requisite Character and Fitness to take the NC Bar Examination.
The second letter, dated June 28, 2002, read as follows:
In response to your letter, if the Florida Supreme Court will give you a certificate of good standing that would be sufficient.
Based on this final letter, Boesch, with the assistance of The Florida Bar, has submitted the present petition to this Court. The North Carolina law examiners have given Boesch until December 12, 2002, to comply with their requirements.
III. THE APPLICABLE RULES
This Court, of course, encounters the same unintended “glitch” in the rules that the Bar encountered. Rule 1-3.2 sets forth three membership classifications in The Florida Bar: “members in good standing,”[1] “conditionally admitted members,” [2] and “inactive members.”[3] A *770 “member in good standing” is defined thusly:
(a) Members in Good Standing. Members of The Florida Bar in good standing shall mean only those persons licensed to practice law in Florida who have paid annual membership fees or dues for the current year and who are not retired, resigned, delinquent, inactive, or suspended members.
R. Regulating Fla. Bar l-3.2(a). Under this rule, no one .can be characterized as “a member in good standing” unless he or she fits the above criteria.
As the Bar points out, this rule works an undue hardship on Ms. Boesch and others who in good faith have “constructively retired” under rule l-3.7(d) by declining to pay membership fees for five years in a row. Such persons cannot be characterized as “former members in good standing” because they in fact did owe fees for five years prior to their constructive retirement. And yet such “constructive retirements” are sanctioned by the rules and are pursued innocently by members.
The rules themselves, I believe, offer a common sense solution to this “glitch.” In addition to the three membership classifications noted above under rule 1-3.2, two other rules, i.e., rules 1-3.5 and 1-3.6, denote two de facto classifications: “retired members,”[4] and “delinquent members.” [5] Reading sections l-3.2(c), 1-3.5, and 1-3.6 in pari materia, a member in good standing may alter his or her membership status in three ways: the member may become “inactive,” may “retire,” or may become “delinquent.” The present case- concerns only the latter classification.
A member may become “delinquent” by declining to pay membership fees or declining to meet CLE or basic skills course requirements.[6] A delinquent member (a) must continue to pay annual membership fees,[7] (b) must continue to meet CLE requirements,[8] and (c) may petition to be reinstated if delinquent for less than five years[9] or may apply to be readmitted if delinquent for five years or more.[10] Specifically, a member — if delinquent for less than five years — can extinguish the delinquency by paying fee arrearages and completing outstanding course requirements.[11] On the other hand, a member — if delinquent for five years or more — -“shall not be reinstated ... and must be readmitted upon application to and approval by the Florida Board of Bar Examiners.” [12]
In the present case, prior to the time Ms. Boesch’s membership lapsed on October 12, 1998, she was eligible to be reinstated by paying her fee arrearages and completing her outstanding course requirements. After October 12, 1998, however, she no longer was eligible for reinstatement, even if she so desired. The only way for her to become a member was to apply for readmission just as anyone else seeking to take the bar examination. Although Ms. Boesch no longer was eligible for reinstatement, she nevertheless was in good standing with the Bar in *771 terms of applying for readmission, for the slate had been wiped clean of fee arrearag-es and outstanding course requirements.[13]
V. CONCLUSION
Ms. Boesch did everything right under the above rules to accomplish her stated goal of unilaterally ending her membership in The Florida Bar. Instead of filing to become an inactive member or petitioning to retire, she simply declined to pay her fees. After five years, her membership lapsed. According to her sworn petition, Ms. Boesch was not a scofflaw- trying to cheat the Bar out of membership fees but rather was a rule-abiding member who was seeking only to effect a “constructive retirement.”
All parties agree that. Ms. Boesch has an unblemished disciplinary record in Florida, Washington, D.C., and California. According to her sworn petition, Ms. Boesch has compiled an exemplary record during her years of practice. While a member of the California Bar, Ms. Boesch was accorded numerous awards for her selfless devotion to the citizens of that state and she has garnered national recognition for her pro bono work on behalf of the homeless. In fact, one of the largest cities in the nation has designated May 12, 2001, as “Lydia Boesch Day”:
Petitioner has devoted a substantial portion of her practice to performing pro bono work. In 1991, she was given the Outstanding Pro Bono Attorney award by the San Francisco Bar Association for her work on behalf of the homeless. Her work on behalf of the homeless also was featured in a video presentation shown at the 1992 Annual Meeting of the American Bar Association. This presentation was commissioned by Talbot “Sandy” D’Alemberte, then President of the ABA. In 2001, the Board of Supervisors of the City and County of San Francisco named May 12, 2001, “Lydia Boesch Day” in San Francisco, in commendation for the pro bono work petitioner had provided on behalf of the citizens of San Francisco.
This Court, in denying Ms. Boesch’s petition, is perpetrating a double injustice. First, the Court is working an injustice against Ms. Boesch, for the Court is barring an extraordinarily gifted and passionate member of the legal profession from contributing to society in a manner that is commensurate with her abilities and expertise. Second, the Court is working an injustice against society, for the Court is depriving society of the substantial services of this highly skilled and nationally recognized advocate of the poor and underprivileged. Instead of interposing a procedural bar that effectively ivill prevent Ms. Boesch from practicing law ever again in many states, this Court should be lauding her exemplary devotion to the legal profession.
*772 On this record, Ms. Boesch appears to embody all that is fíne and noble in the legal profession and I would certify to the North Carolina law examiners the simple truth:
Under subchapter 1-3, Rules Regulating the Florida Bar, Ms. Boesch is in good standing to apply for readmission to The Florida Bar. She has an unblemished disciplinary record, owes no fees, and has no outstanding OLE or basic skills course requirements.
No party opposes Ms. Boesch’s petition. Just the opposite. As noted above, not only does the The Florida Bar not oppose the petition, but the General Counsel for the Bar has written several letters on Ms. Boesch’s behalf and has assisted her in framing the present petition. Additionally, the Executive Director of the Bar has written to the Clerk of this Court on her behalf. The Bar concedes that the unintended “glitch” in subchapter 1-3 is largely unforeseeable and can cause an unfair hardship on former members such as Ms. Boesch. The Bar, however, feels “handcuffed” by the rules and looks to this Court for guidance in solving this problem.

No party has briefed this Court in opposition to the Bar’s and Ms. Boesch’s position.

In my opinion, subchapter 1-3 was promulgated to foster the ideal of professionalism in the practice of law and never was intended to “handcuff’ the Bar and compel that body to forsake the principles of fair play and essential justice. Accordingly, I would read these rules broadly — as intended — to promote the interests of society and the legal profession at large, not narrowly and parsimoniously to effect this heart-rending injustice.
ANSTEAD, C.J., concurs.

. See R. Regulating Fla. Bar 1-3.2(a).

. See R. Regulating Fla. Bar 1-4-3.2(b).

.See R. Regulating Fla. Bar 1 — 3.2(c); 1-7.3(d).

. See R. Regulating Fla. Bar 1-3.5.

. See R. Regulating Fla. Bar 1-3.6.

. See R. Regulating Fla. Bar 1-3.6.

. See generally id. (providing no exemption for fees).

. See generally id. (providing no exemption for CLE requirements).

. See R. Regulating Fla. Bar 1-3.7(a)-(c).

. See R. Regulating Fla. Bar 1-3.7(d).

. See id.

. R. Regulating Fla. Bar 1-3.7(d) (emphasis added).

. The General Counsel to The Florida Bar was emphatic on this point in his letter of April 30, 2002:
If Ms. Boesch were to seek admission to practice law in our state anew through the Florida Board of Bar Examiners — and if The Florida Bar were asked to speak officially regarding that issue — we would not offer any unfavorable commentary regarding Ms. Boesch's character and fitness due to her circumstances while previously admitted to practice in our state. Her final status as a "lapsed” member, who departed The Florida Bar no longer in good standing solely by virtue of nonpayment of membership fees, is not viewed by this organization as an impediment to readmission. Indeed, I understand that individuals situated similarly to Ms. Boesch who have actually applied for readmission in Florida have not experienced any difficulties in this regard with our state’s bar examiners if their lapse in prior membership was not related to professional misconduct.
(Emphasis added.)